### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHARLES R. BOWLDS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>OKLAHOMA INDIGENT )<br>DEFENSE SYSTEM, et al., )<br>)<br>Defendants. ) | Case No. CIV-24-220-SLP |

### **O R D E R**

Before the Court is the Report and Recommendation [Doc. No. 10] (R.&R.), issued by United States Magistrate Judge Suzanne Mitchell pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). Plaintiff, a state prisoner appearing pro se and in forma pauperis, seeks civil rights relief, alleging violations of his federal constitutional rights under 42 U.S.C. § 1983. The Magistrate Judge has recommended dismissal of Plaintiff's action.

Plaintiff has filed an Objection [Doc. No. 17] to the R.&R. Accordingly, the Court must make a de novo determination of those issues specifically raised by the Objection, and may accept, modify, or reject the recommended decision. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

### **I.    Factual and Procedural Background**

Plaintiff was tried by a jury and convicted in the District Court of Logan County, State of Oklahoma, Case No. CF-2019-45, of: Count 1, Kidnapping, in violation of Okla. Stat. tit. 21, § 741; Count 3, Assault and Battery with a Dangerous Weapon, in violation of Okla. Stat. tit. 21, § 645, both After Former Conviction of Two or More Felonies; and

Count 4, Domestic Assault and Battery (Misdemeanor), in violation of Okla. Stat. tit. 21, § 644(C).[1]

Plaintiff filed a direct appeal of his conviction to the Oklahoma Court of Criminal Appeals (OCCA). The state district court appointed the Oklahoma Indigent Defense System (OIDS) to represent Plaintiff. During the pendency of his direct appeal, Plaintiff filed an application in state district court requesting leave to proceed pro se. *See In re Bowlds*, Case No. MI-2023-22, District Court of Pittsburg County, State of Oklahoma. The state district court granted Plaintiff's request and found that Plaintiff made a knowing and voluntary decision to represent himself on direct appeal. *See id*., Order filed Oct. 6, 2023.[2] At the time this relief was granted, a counseled appellate brief had already been filed on Plaintiff's behalf.

The OCCA affirmed Plaintiff's conviction on July 18, 2024, during the pendency of this action. *See Bowlds v. State*, No. F-2021-1155, 2024 WL 3451551 (Okla. Crim. App. July 18, 2024) (for publication). The OCCA addressed both the counseled challenges to Plaintiff's conviction and the grounds Plaintiff raised on his own behalf. Plaintiff did not raise any claim of ineffective assistance of appellate counsel.

---

[1] The Court takes judicial notice of Plaintiff's state court proceedings, available at www.oscn.net.

[2] Plaintiff also chose to appear pro se midstream during the course of his trial. On direct appeal, the OCCA found that Plaintiff made a knowing and voluntary decision to represent himself at trial and, thereafter, at sentencing. *See Bowlds*, 2024 WL 3451551 at *3.

II.     **Plaintiff's Section 1983 Claims**

Plaintiff alleges the State of Oklahoma, OIDS, its Board of Directors, and other Defendants employed by OIDS (including his court-appointed appellate counsel) have violated his Sixth Amendment right to the effective assistance of counsel.  But he emphasizes that his claim "is not premised upon ineffective assistance of counsel based upon the 'advice' or deficiencies provided by Plaintiff's individual OIDS-appointed counsel(s)." Compl. [Doc. No. 1-1] at 8-9.  Instead, Plaintiff claims that OIDS has a policy or custom of structuring its contracts in such a way so as to delay payment to attorneys in a manner that creates a "pervasive conflict of interest" by creating "a powerful financial incentive" for attorneys to take on too many cases and close those cases out quickly. *Id.* at 3, 9.

According to Plaintiff, the OIDS policy incentivizes attorneys "not only to close cases as quickly as possible, it also incentivizes them to take on a repugnant amount of cases, and abandon their ethical oaths and statutory obligations" resulting in their ineffecive representation contrary to the rights protected by the Sixth Amendment. *Id*. at 3-4.  Plaintiff alleges that "[t]he statutorily-required [sic] provision which delays the final 10% of the annual contractual payment until the end of the year, and upon verification that all of the contract attorney's cases are closed, creates a powerful financial incentive for attorneys to take on Brobdingnagian case loads and ultimately close out cases quickly by constructing and submitting cut and paste boilerplate briefs." *Id*. at 9-10.

Plaintiff alleges that he faced a "Hobson's choice" between continuing with representation by incompetent or unprepared counsel or appearing pro se.  *Id*. at 7.  And

3

he alleges that he advised the state district court of this "Hobson's choice" when he moved to proceed pro se on direct appeal of his conviction. *Id*. at 8. Plaintiff claims, therefore, that he did not voluntarily relinquish his right to the assistance of an attorney on direct appeal. *Id*. As a consequence, Plaintiff alleges that he has been "immersed in the abyss of the [Oklahoma] Court of Criminal Appeals (OCCA) Rules and appellate jurisprudence, in an attempt to perfect his direct appeal." *Id*. at 10.[3]

### III. Plaintiff's Objections

#### A. Individual-Capacity Claims Against Defendants Babcock and Capraro

As set forth, the state district court appointed counsel to represent Plaintiff on direct appeal and his case was assigned, within the General Appeals Division of OIDS, to Defendant Babcock. The case was then reassigned, within OIDS, to Defendant Capraro.

Plaintiff objects to the Magistrate Judge's findings that he has failed to state individual-capacity claims against Defendants Babcock and Capraro, because, as public defenders, these Defendants are not "state actors." *See* R.&R. at 5 -9. Plaintiff contends these Defendants "should be considered state actors because they were conspiring with state officials, through the OIDS contract, to deprive him of his Sixth and Fourteenth Amendment Constitutional rights." Obj. at 3. Plaintiff cites in support *Feenstra v. Sigler*, No. 19-CV-00234-GFK-FHM, 2019 WL 6064854 (N.D. Okla. Nov. 14, 2019).[4]

---

[3] Plaintiff did, in fact, "perfect" his direct appeal. Thus, he cannot show he was prejudiced by an inability to do so.

[4] As the Magistrate Judge noted, "Plaintiff parrots the court's language in *Feenstra* as the basis of his claim." R.&R. at 8, n. 5 (citing Compl.).

4

The Magistrate Judge thoroughly addressed, and rejected this argument and expressly distinguished *Feenstra* in doing so. R.&R. at 6-7, n. 3. As the Magistrate Judge found, Plaintiff acknowledges that OIDS "employs" these Defendants in its "General Appeals Division" and, therefore, "Plaintiff's claim that an OIDS contract impacted their ability to provide him adequate legal representation is baseless." R.&R. at 8. The Court concurs with the Magistrate Judge's analysis.

In his Objection, relying on *Feenstra*, Plaintiff argues that "OIDS attorneys that contract with the General Appeals Division do so pursuant to the same statutorial provision (policy) as set out in the Indigent Defense Act, with the same flat-rate fiscal year contracts." Obj. at 4. But he offers no factual or legal support for this argument. In any event, Plaintiff's allegations are devoid of any facts to show that any "policy" was the moving force behind any violation of his constitutional right to effective assistance of counsel. *See Monnell v. Dep't of Social Servs.*, 436 U.S. 658, 690-92 (1978) (A government entity may not be held liable under 42 U.S.C. § 1983, unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights.).

In *Feenstra*, the plaintiffs alleged "systemic" failures by OIDS-appointed contract attorneys to inform indigent defendants of their statutory right, under Oklahoma law, to an "ability to pay hearing" and to "challenge the imposition of fines and fees against [p]laintiffs due to their poverty." *Feenstra*, 2019 WL 6064854 at * 1-2. The challenged contractual policy allegedly resulted in "systemic" conduct pursuant to which the issue of indigency in the context of non-payment of funds was *routinely* ignored. *Id.* at * 7. Thus, the plaintiffs alleged conduct that caused specific prejudice as a result of a challenged

policy to support their claim of a constitutional violation. Unlike the plaintiffs' claims in *Feenstra*, here, Plaintiff does not identify any facts to demonstrate any "systemic" failure. Nor does he identify any impact the alleged policy had on the direct appeal rights of indigent defendants. Instead, notwithstanding his assertion to the contrary, Plaintiff's allegations are directed solely to actions taken in his singular case.[5]

Furthermore, as discussed, Plaintiff sought, and was granted, the right to proceed pro se on direct appeal. Notwithstanding Plaintiff's conclusory assertion to the contrary, the state trial court found Plaintiff made a knowing and voluntary waiver of his right to appellate counsel. Consequently, Plaintiff is hard-pressed to assert a violation of his Sixth Amendment rights in this § 1983 action. As previously set forth, his conclusory and speculative allegations of prejudice are insufficient.

More fundamentally, as the Magistrate Judge found, to the extent Defendants "inadequately represented him on appeal by requesting extensions of time or filing an '[in]sufficient' and '[in]effective brief" such alleged conduct demonstrates Defendants were performing "traditional functions while acting as Plaintiff's appellate attorneys" and were neither "state actors" nor acting "under color of state law" for purposes of his § 1983 claims. *See* R.&R. at 9. Thus, Plaintiff's § 1983 claims premised on such conduct are "squarely foreclosed" by *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981). *Id*. at 5-9.

---

[5] Plaintiff does not even identify any prejudice resulting from the OIDS' attorneys' representation in his own direct appeal. Plaintiff alleges no facts to show his direct appeal counsel were incompetent or unprepared. He references the fact that they requested extensions of time to submit briefing, but such conduct, without more, is insufficient to substantiate his claims.

B.  **Dismissal of Defendants Laughlin and Danner**

Defendant also objects to the Magistrate Judge's recommendation that Defendants Laughlin and Danner be dismissed from this action.  Plaintiff alleges these Defendants acted in a supervisory capacity with respect to the alleged unconstitutional conduct of Defendants Babcock and Capraro.  Defendant Laughlin is the Executive Director of OIDs and Defendant Danner was the direct supervisor who assigned Plaintiff's appellate case to Defendants Babcock and Capraro.  According to Plaintiff, Defendants Laughlin and Danner "implement[ed] a system that denies Plaintiff conflict-free counsel."  Compl. [Doc. No. 1], Attachment [1-1] at 13.  But as the Magistrate Judge found, "the contract provision about which Plaintiff complains does not apply to Defendants Babcock and Capraro's conduct in representing him on appeal."  R.&R. at 11.  And, as this Court has further addressed, his allegations of "systemic" conduct or resulting prejudice to support any constitutional violation are wholly deficient.  Accordingly, "Plaintiff's allegations against these supervisory Defendants are insufficient to state a supervisory claim for relief[.]"  R.&R. at 11.

Plaintiff does not refute the Magistrate Judge's finding.  Instead, he asks that he be allowed the "opportunity to fully develop the record, so that he can show this Court how the fee provision does in fact apply to [such conduct]."  Obj. at 7.  But the Court will not permit discovery or further development of a legally baseless claim. *See, e.g., Shelton v. Sha Ent., LLC*, No. CV-20-644-D, 2020 WL 6389858, at *2 (W.D. Okla. Oct. 30, 2020) ("Discovery is authorized solely for parties to develop the facts in a lawsuit in which a plaintiff has stated a legally cognizable claim, not in order to permit a plaintiff to find out

7

whether he has such a claim." (quoting *Podany v. Robertson Stephens, Inc.*, 350 F. Supp. 2d 375, 378 (S.D.N.Y. 2004)).

### C. Dismissal of Claims Against OIDS Board of Directors

Plaintiff next objects to the dismissal of the claims against the OIDS Board of Directors. The Magistrate Judge recommended dismissal of the official-capacity claims against the Board. *See* R.&R. at 13. Plaintiff does not object to this finding. Instead, he attempts to argue that he brings individual capacity claims against the Board. And he contends that the "OIDS Board of Directors set in motion a series of events that they should have known would cause others to deprive the Plaintiff, and others, of their Constitutional rights." Obj. at 9. He further argues that his Complaint plausibly alleges "that the OIDS Board of Directors engaged in conduct and policies which they knew, or should have known would cause Plaintiff and other indigent criminal defendants to be deprived of their constitutional rights." *Id.* at 10.

A review of the Complaint demonstrates that Plaintiff brought only official-capacity claims against the OIDS Board of Directors. *See* Compl. at 5.[6] Moreover, his conclusory assertions that the Board engaged in unconstitutional conduct, divorced from any factual allegations, is insufficient to state a § 1983 claim for relief.

---

[6] As the Magistrate Judge found, Eleventh Amendment immunity bars Plaintiff's claims against the State of Oklahoma, OIDS (an agency of the State), and the OIDS board members in their official capacities. *See* R.&R. at 12-13.

8

### D. *Heck* Bar

Plaintiff further objects to the Magistrate Judge's finding that his claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). In most conclusory fashion, Plaintiff states "Judgment for the Plaintiff would in no way imply the invalidity of his conviction or sentence." Obj. at 11. Plaintiff's objection is without merit. As set forth, Plaintiff's allegations are directed at alleged failures of his appellate counsel with respect to their representation of Plaintiff on direct appeal, in his singular case. Thus, "his claim serves as an attack on his criminal proceedings underlying his Logan County convictions," *see* R.&R. at 15 and, as such, his claims are barred by *Heck*.[7]

### E. Leave to Amend

Finally, Plaintiff objects to the Magistrate Judge's finding that leave to amend would be futile. But Plaintiff fails to support this objection with any factual assertions or legal argument. Because he fails to adequately support his objection, he was waived any objection to this finding. *See, e.g., Schupper v. Cafasso*, 708 F. App'x 943, 946 (10th Cir. 2017) (generalized objections to a magistrate judge's findings and recommendations are insufficient) Alternatively, the Court fully concurs with the Magistrate Judge's finding that leave to amend would be futile.

---

[7] Although Plaintiff also objects to the Magistrate Judge's finding that *Younger* abstention bars his claims, this finding was an alternative basis upon which the Magistrate Judge recommended dismissal and the Court need not address it. *See Younger v. Harris*, 401 U.S. 37, 45 (1971).

## IV.      Conclusion

IT IS THEREFORE ORDERED that the Report and Recommendation [Doc. No. 10] is ADOPTED and Plaintiff's action is DISMISSED.[8]  A separate judgment of dismissal shall be entered.

IT IS SO ORDERED this 11th day of September, 2024.

SCOTT L. PALK
UNITED STATES DISTRICT JUDGE

---

[8] Eleventh Amendment immunity is jurisdictional and, therefore, dismissal of claims on this basis is without prejudice.  *See Colby v. Herrick*, 849 F.3d 1273, 1278 (10th Cir. 2017).  Additionally, dismissal of claims on the basis of *Heck* is without prejudice.  *See St. George v. City of Lakewood, Colo.*, No. 22-1333, 2024 WL 3687780 at * 4 (10th Cir. Aug. 7, 2024) (*citing Fottler v. United States*, 73 F.3d 1064, 1065 (10th Cir. 1996)).